**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

|  |  |
|---|---|
| IN RE MANPOWER OF LANSING, MI, INC., DATA BREACH LITIGATION | ) ) ) ) ) ) ) ) ) ) |

**Civil Action No.**
**1:25-cv-956-PLM-PJG**

**ORAL ARGUMENT REQUESTED**

**MANPOWER OF LANSING, MI, INC.'S MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT AND / OR COMPEL ARBITRATION**

Defendant Manpower of Lansing, MI, Inc. ("**Manpower**"), through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(6), and the Federal Arbitration Act, 9 U.S.C.A. § 1, *et seq*., moves this Court to dismiss the Class Action Complaint (the "**Complaint**") filed by Plaintiffs Mary Brooks, Sara Conrad, Christine Cooper, Fredrick Cooper, Amy Doublin, Deanna Ghinelli, Shanna Harmon, Courtney Howard, Lorna Lane, Latoya Middleton, and Christopher Platter (collectively "**Plaintiffs**") and / or alternatively compel arbitration of the claims brought by Plaintiffs Brooks, Harmon, and Doublin. The grounds for this Motion are set forth in the attached Brief in Support. Pursuant to L.R. 7.1(a), Manpower's counsel sought, but was denied, concurrence to this Motion.

WHEREFORE, Defendant Manpower of Lansing, MI, Inc. respectfully requests this Court enter an Order: (A) dismissing Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) for lack of Article III standing; (B) dismissing Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted; (C) and / or enforcing Plaintiffs Brooks', Harmon's, and Doublin's

respective agreements to arbitrate; and (D) awarding Manpower of Lansing, MI, Inc. such other and further relief as is appropriate.

Dated: January 26, 2026,

Respectfully Submitted,

*/s/ Timothy J. Lowe*
Timothy J. Lowe (P68669)
Mitchell A. Capp (P84197)
McDonald Hopkins PLC
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
tlowe@mcdonaldhopkins.com
mcapp@mcdonaldhopkins.com
*Counsel for Manpower of Lansing, MI, Inc.*

2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| IN RE MANPOWER OF LANSING, MI, INC., DATA BREACH LITIGATION | ) ) ) ) ) ) ) ) ) ) **Civil Action No.** **1:25-cv-956-PLM-PJG** |

**BRIEF IN SUPPORT OF**
**MANPOWER OF LANSING, MI, INC.'S MOTION TO DISMISS PLAINTIFFS'**
**COMPLAINT AND / OR COMPEL ARBITRATION**

# <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page</u></div>

TABLE OF AUTHORITIES..................................................................................ii

STATEMENT OF THE ISSUES PRESENTED.....................................................vii

I.    INTRODUCTION..................................................................................... 1

II.   PLAINTIFF'S ALLEGATIONS ................................................................. 2

III.  LEGAL STANDARD................................................................................ 4

    A.   Fed. R. Civ. P. 12(b)(1) ................................................................ 4

    B.   Fed R. Civ. P. 12(b)(6) ................................................................. 4

    C.   Motion to Compel Arbitration under the Federal Arbitration Act .................. 5

IV.  ARGUMENT ........................................................................................ 5

    A.   Plaintiffs Lack Article III Standing to Bring Suit Against Manpower........................... 5

    B.   Counts I and II: Plaintiffs' Negligence Claims Fail Because Plaintiffs Do Not Allege Actual Injury or Legally Cognizable Damages ................................................. 11

    C.   Count III: Plaintiffs' Invasion of Privacy Claim Fails to State a Claim ...................... 15

    D.   Count IV: Plaintiffs' Breach of Implied Contract Claim is Unavailing....................... 18

    E.   Count V: The Unjust Enrichment Claim Fails Because Plaintiffs Do Not Allege that They Bestowed a Benefit on Manpower or That Any Inequity Occurred ............ 21

    F.   Alternatively, Plaintiffs Brooks, Harmon, and Doublin Must Be Dismissed Based on their Agreements to Arbitrate.................................................................. 22

V.   CONCLUSION ..................................................................................... 25

37440192.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abnet v. Coca-Cola Co.*,
   786 F Supp 2d 1341 (W.D. Mich. 2011) ...............................................................11

*Alan Custom Homes, Inc. v. Krol*,
   256 Mich App 505 (2003)..................................................................................20

*Alar v. Mercy Mem. Hosp.*,
   208 Mich App 518 (1995)..................................................................................19

*Allied-Bruce Terminix Companies, Inc v Dobson*,
   513 US 265 (1995)..............................................................................................23

*Altobelli v. Hartmann*,
   499 Mich. 284 (2016) ....................................................................................23, 24

*Ass'n of Am. Physicians & Surgeons v. U.S. Food and Drug Admin.*,
   13 F.4th 531 (6th Cir. 2021)................................................................................6

*Baker v. Iron Workers Local 25 Vacation Pay Fund*,
   999 F.3d 394 (6th Cir. 2021) ..............................................................................5

*Bank of Am., N.A. v. First Am. Title Ins. Co.*,
   499 Mich 74 (2016) .....................................................................................17, 18

*Barclae v. Zarb*,
   300 Mich App 455 (2013).................................................................................19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955 (2007)...................................................................4

*Bohnak v. Marsh & McLennan Companies, Inc.*,
   79 F.4th 276 (2d. Cir. 2023)...............................................................................8

*Boykin v. Family Dollar Stores of Michigan, LLC*,
   3 F.4th 832 (6th Cir. 2021) .................................................................................5

*Bucholz v. Meyer Njus Tanick, PA*,
   946 F. 3d 855 (6th Cir. 2020)...........................................................................4, 8

*Burkhardt v. Bailey*,
   260 Mich App 636 (2004).................................................................................18

*Canterbury v. Corewell Health*,
   No. 24-00189-NZ (Cir Ct of Kent Cnty June 11, 2024).....................................14

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).............................................................................6, 8, 11

*County of Ottawa v. Jaklinski*,
    423 Mich. 1 (1985) .......................................................................................23

*Detroit Automobile Inter-Insurance Exchange v Reck*,
    90 Mich App 286, 282 NW2d 292 (1979).................................................23

*Detroit v. Highland Park*,
    326 Mich 78 (1949) ......................................................................................18

*Doe v. Henry Ford Health Sys.*,
    308 Mich App 592 (2014)........................................11, 12, 13, 14, 17, 18, 20, 21

*Doe v. Mills*,
    212 Mich App 73 (1995)...............................................................................17

*Duran v. Detroit News, Inc.*,
    200 Mich App 622 (1993).......................................................................16, 17

*Earp v. Detroit*,
    16 Mich App 271 (1969)...............................................................................16

*Ferguson v. Pioneer State Mut. Ins. Co.*,
    273 Mich App 47 (2006)...............................................................................20

*Garland v. Orlans, PC.*,
    999 F.3d 432 (6th Cir. 2021) .......................................................................10

*Gen. Aviation, Inc. v. Capital Region Airport Auth.*,
    224 Mich App 710 (1997).............................................................................19

*Henry v. Dow Chem. Co.*,
    473 Mich 63 (2005) ...........................................................11, 12, 13, 14, 15

*Johnson v. Credit Acceptance Corp.*,
    No. 1:21cv681, 2021 WL 8316493 (W.D. Mich. Oct. 14, 2021) (Maloney, J.).......................5

*Knight v. Idea Buyer, LLC*,
    723 F. App'x 300 (6th Cir. 2018).................................................................5

*Kaleva-Norman-Dickson School District No. 6 Counties of Manistee, et al v*
    *Kaleva-Norman-Dickson School Teachers' Ass'n*,
    393 Mich 583, 227 NW2d 500 (1975)........................................................24

*Landstar Express Am., Inc. v. Nexteer Auto. Corp.*,
    319 Mich App 192 (2017)........................................................................21, 22

iii

*Lansing Ass'n of Sch. Administrators v. Lansing Sch. Dist. Bd. of Ed.*,
   216 Mich App 79 (1996)..................................................................................17

*Legg v. Leaders Life Ins. Co.*,
   574 F. Supp. 3d 985 (W.D. Okla. 2021) ...........................................................7

*Lewis v. LeGrow*,
   258 Mich App 175 (2003).................................................................................15

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...........................................................................................6

*Mallory v. City of Detroit*,
   181 Mich App 121 (1989).................................................................................18

*Martin v. Evoqua Water Techs., LLC*,
   No. 1:19-cv-585, 2021 WL 1088260 (W.D. Mich. Feb. 24, 2021) ........................16

*McMorris v. Carlos Lopez & Associates, LLC*,
   995 F.3d 295 (2d. Cir. 2021)..............................................................................8

*McNeil v. Best Buy Co., Inc.*,
   No. 4:13CV1742 JCH, 2014 WL 1316935 (E.D. Mo. Apr. 2, 2014)......................7

*Miller v. Curries*,
   50 F.3d 373 (6th Cir. 1995) ...............................................................................5

*Miller-Davis*, 495 Mich at 178....................................................................................20

*Mitsubishi Motors Corporation v Soler Chrysler-Plymouth*,
   473 US 614 (1985)............................................................................................23

*Morris Pumps v. Centerline Piping, Inc.*,
   273 Mich App 187 (2006).................................................................................21

*Nealy v. Shelly & Sands, Inc.*,
   852 F. App'x 879 (6th Cir. 2021).......................................................................5

*Nyman v. Thomson Reuters Holdings, Inc.*,
   329 Mich App 539 (2019)......................................................................12, 17, 18

*Penner v. Seaway Hosp.*,
   169 Mich App 502 (1988).................................................................................19

*Pisciotta v. Old Nat. Bancorp*,
   499 F.3d 629 (7th Cir. 2007) .............................................................................7

*Polkowski v. Jack Doheny Companies, Inc.*,
   No. 2:25-cv-10516, 2025 WL 3079358 . (E.D. Mich. Nov. 4, 2025)..............10, 14, 15, 20, 22

iv

*Powers v. Peoples Cmty. Hosp. Auth.*,
   183 Mich App 550 (1990) ........................................................................................19

*In re Practicefirst Data Breach Litigation*,
   No. 121CV00790JLSMJR, 2022 WL 354544 (W.D.N.Y. Feb. 2, 2022) ...........................6, 7

*Rakyta v. Munson Healthcare*,
   No. 354831, 2021 WL 4808339 (Mich Ct App Oct. 14, 2021) ...........................13, 14, 15, 21

*Rand v. Travelers Indemnity Company*,
   637 F. Supp.3d 55 (S.D.N.Y. 2022) ..............................................................................8

*Rippy v. Hattaway*,
   270 F.3d 416 (6th Cir. 2001) .....................................................................................4

*Rodriguez v. CRG Lynwood LLC*,
   No. 24-111576, 2025 WL 2700614 (E.D. Mich. Sept. 22, 2025) ...................................8, 9, 15

*Saker v. Cherry St. Servs., Inc. d/b/a Cherry Health*,
   No. 24-01489-CZ (Cir Ct of Kent Cnty October 4, 2024) ...........................................14, 20, 22

*Smith v. Calvary Christian Church*,
   462 Mich. 679 (2000) ...............................................................................................17

*Southland Corporation v Keating*,
   465 US 1 (1984) ......................................................................................................23

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ..............................................................................................4, 6

*Stout v JD Byrider*,
   228 F3d 709 (6th Cir. 2000) .....................................................................................23

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ..............................................................................................6, 7

*Teamsters Local Union 480 v. United Parcel Serv., Inc.*,
   748 F.3d 281 (6th Cir. 2014) .....................................................................................5

*Tobin v. Civil Service Comm.*,
   416 Mich 661 (1982) ...........................................................................................15, 16

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ...........................................................................................6, 7, 8

*Warth v. Seldin*,
   422 U.S. 490 (1975) .................................................................................................5

v

*Washington v. Roosen, Varchetti & Oliver*,
    894 F. Supp. 2d 1015 (W.D. Mich. 2012) (Maloney, C.J.) ......................................5

*Wold Architects & Eng'rs v. Strat & Assoc, Inc*,
    474 Mich. 223 (2006) .........................................................................................23

**Statutes**

Federal Arbitration Act, 9 U.S. C.A. §1 *et seq.* ............................................22, 23, 25

Federal Arbitration Act, 9 U.S. C.A. §3 ........................................................................5

Federal Arbitration Act, 9 U.S. C.A. §4 ........................................................................5

FTC Act .......................................................................................................................19

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................1, 4, 6, 11, 25

Fed. R. Civ. P. 12(b)(6)................................................................................1, 4, 5, 11, 25

MCR 2.116(C)(8).....................................................................................................14, 21

37440192.1

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.      Whether Plaintiffs' Complaint must be dismissed for lacking Article III standing where Plaintiffs have failed to establish a concrete and particularized injury in fact that is fairly traceable to Manpower, and Plaintiffs' allegations are based merely on fear of potential and speculative future harm?

Manpower answers: Yes.

This Court should answer: Yes.


2.      Whether Plaintiffs' Complaint should be dismissed in its entirety against Manpower when Plaintiffs have failed to establish the *prima facie* elements of their claims against Manpower under Count I – negligence, Count II – negligence *per se*, Count III – invasion of privacy, Count IV – breach of implied contract, and Count V – unjust enrichment?

Manpower answers: Yes.

This Court should answer: Yes.


3.      Whether Plaintiffs Brooks, Harmon, and Doublin should be dismissed from this case based on their respective agreements with Manpower to arbitrate?

Manpower answers: Yes.

This Court should answer: Yes.

## I.      INTRODUCTION

Defendant Manpower of Lansing, MI, Inc. ("**Manpower**") was the target of a cyberattack by an unknown bad actor on or around December 29, 2024 through January 12, 2025 (the "**Cyberattack**"). Plaintiffs Mary Brooks, Sara Conrad, Christine Cooper, Fredrick Cooper, Amy Doublin, Deanna Ghinelli, Shanna Harmon, Courtney Howard, Lorna Lane, Latoya Middleton, and Christopher Platter (collectively "**Plaintiffs**") believe their personal information was stolen by unknown third parties as a result of the Cyberattack. Plaintiffs assert five causes of action against Manpower, including: (1) negligence (Count I); (2) negligence *per se* (Count II); (3) invasion of privacy (Count III); (4) breach of implied contract (Count IV); and (5) unjust enrichment (Count V).

As a threshold matter, Plaintiffs lack standing to sue Manpower because they have not alleged a concrete, particularized, actual or imminent injury. Plaintiffs' alleged risk of future identity theft is simply too speculative to support Article III standing. Accordingly, Plaintiffs' Complaint should be dismissed under Rule 12(b)(1). Furthermore, even if Plaintiffs could establish standing to overcome Rule 12(b)(1) (which they cannot), Plaintiffs' Complaint does not establish the *prima facie* elements of their claims under Rule 12(b)(6) and fails under well-established Michigan substantive law. As the Michigan Court of Appeals has affirmed, Plaintiffs cannot base their claims on fears of potential *future* harm. Nor do Plaintiffs have a claim simply because they have allegedly taken prophylactic measures to ameliorate the risk of that speculative potential harm. Present damages derivative of a possible future injury do not constitute an actual, present injury. Instead, Plaintiffs must allege that they suffered actual, *present* injury – which they have not done. Michigan's state and federal courts have repeatedly dismissed similar complaints.

Ultimately, even if Plaintiffs could allege an actionable present injury, their claims fail on

37440192.1

other grounds. Specifically, the invasion-of-privacy claim fails because Plaintiffs do not plead – and reasonably cannot plead – that their personal information was intentionally disclosed by Manpower or disclosed to a large group of people such that it was certain to become public. The breach of contract claim fails because Plaintiffs have failed to plead the existence of an enforceable contract or cognizable damages. The unjust enrichment claim fails because Plaintiffs do not allege that they conferred a benefit on Manpower or any inequity.

Moreover, Manpower and Plaintiffs Brooks, Harmon, and Doublin entered into Arbitration Agreements as a condition of their employment. The Arbitration Agreements expressly provide that binding arbitration shall be the sole remedy for any and all disputes arising between them, of any kind or type – and that they shall arbitrate any disputes on an individual basis only and not on a class action basis. Accordingly, Plaintiffs Brooks, Harmon, and Doublin must be dismissed from this case at the outset so that Manpower and Plaintiffs Brooks, Harmon, and Doublin may participate in agreed upon arbitration proceedings. For these reasons, Manpower respectfully requests the Court grant this Motion and dismiss Plaintiffs' Class Action Complaint (the "**Complaint**").

## II.    **PLAINTIFF'S ALLEGATIONS**[1]

Manpower is a staffing agency that connects individuals with employers. (ECF No. 21 at PageID.186 ¶ 31). Plaintiffs allege they either utilized Manpower's staffing services and or were former employees of Manpower (*Id*. at PageID. 211-232 ¶¶ 141, 153, 166, 178, 191, 203, 215, 227, 239, 251, 265).[2]

---

[1] These allegations are taken from the Complaint, [ECF No. 21]. Manpower accepts the allegations as true solely for purposes of this Motion.

[2] According to Manpower's records, all named Plaintiffs are former employees of Manpower.

2

On or around April 3, 2023, November 13, 2023, and January 22, 2024, respectively, Plaintiffs Brooks, Harmon, and Doublin entered into Arbitration Agreements with Manpower as a condition of their employment with Manpower. *See attached* **Exhibit A,** Declaration of Kristi Bernhardt.  Pursuant to the Arbitration Agreements, Plaintiffs Brooks, Harmon, and Doublin and Manpower mutually agreed that "all disputes between them of any kind or type ... whenever they may arise will be submitted exclusively to final and binding arbitration as specified herein [...]" Moreover, the Arbitration Agreement expressly states that "[c]lass action or collective action arbitration is not permitted under this Agreement. [Manpower] and [Plaintiffs] expressly agree to arbitrate any disputes on an individual basis only and not on a class action or collective action basis. *Id*.

Plaintiffs allege that between December 29, 2024, and January 12, 2025, a cyberattack targeted Manpower's network that contained personally identifiable information ("PII") of Plaintiffs and other individuals. (*Id*. at PageID.187 ¶ 3).   Plaintiffs do not allege that they have been the victims of actual identity theft. Instead, Plaintiffs claim that they have taken preventative measures like researching the Cyberattack, reviewing financial statements, monitoring credit information, and remaining vigilant for signs of identity theft. (*Id*. at PageID.211-232 ¶¶ 148, 159, 171, 183, 196, 208, 220, 232, 244, 258, 270).  Plaintiffs allege that they have suffered actual injury in the form of: (a) damages to and diminution in the value of them (*sic*) PII; (b) loss of privacy; (c) continuous imminent and impending injury arising from the increased risk of financial and identity fraud and theft; (d) lost time and expenses to engage in mitigation efforts; and (e) dealing with increasing spam calls, texts, and emails. (*Id*. at PageID.211-232 ¶¶ 150, 161, 173, 185, 198, 210, 222, 234, 246, 260, 272). Plaintiffs further allege that they have experienced anxiety, stress, and fear. (*Id*. at PageID.211-232 ¶¶  153, 164, 176, 188, 201, 213, 225, 237, 249, 263, 275).

Aside from these conclusory allegations, Plaintiff Brooks alleges that she was "alerted by Chase Bank in January 2025 that her Social Security number was found on the dark web... [which] resulted in [her] contacting Chase to discuss the dark web notification and then closing her Chase account and debit cards." (*Id*. at PageID.212 ¶ 147). Plaintiff F. Cooper alleges that he "received notices that his PI was on the dark web" ... and that he "pulled his credit report and saw several credit inquiries from businesses that were unknown to him." (*Id*. at PageID.218 ¶ 183).

## III.    LEGAL STANDARD

### A.    Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" standing to sue. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A]t the pleadings stage, the plaintiff must allege facts demonstrating each element" of standing. *Bucholz v. Meyer Njus Tanick, PA*, 946 F. 3d 855, 861 (6th Cir. 2020).

### B.    Fed R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) (internal citations and punctuation omitted). Stated differently, a complaint must allege facts that "state a claim to relief that is plausible on its face. "*Twombly*, at 570. A court may dismiss a complaint

under Rule 12(b)(6) where the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Miller v. Curries*, 50 F.3d 373, 377 (6th Cir. 1995).

**C.    Motion to Compel Arbitration under the Federal Arbitration Act**

Section 3 and section 4 of the Federal Arbitration Act (FAA) provide mechanisms for parties to enforce arbitration agreements. *See Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832, 836 (6th Cir. 2021). Section 3 states, in part "on application of the one of the parties" the court may "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" The Sixth Circuit has indicated that Section 3 addresses situations, like this lawsuit, where a plaintiff has filed an action in federal court, the scope of a written arbitration agreement covers the dispute, and the defendant seeks to compel arbitration. *Boykin*, 3 F.4th at 836. The Sixth Circuit has held that a motion to compel arbitration in this situation should be construed by the district court as a Rule 12(b)(6) motion for failure to state a claim. *See Baker v. Iron Workers Local 25 Vacation Pay Fund*, 999 F.3d 394, 400 (6th Cir. 2021); *Nealy v. Shelly & Sands, Inc.*, 852 F. App'x 879, 881 (6th Cir. 2021); *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018); *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014); *see also Johnson v. Credit Acceptance Corp.*, No. 1:21cv681, 2021 WL 8316493, at *1 (W.D. Mich. Oct. 14, 2021) (Maloney, J.); *Washington v. Roosen, Varchetti & Oliver*, 894 F. Supp. 2d 1015, 1029 (W.D. Mich. 2012) (Maloney, C.J.).

## IV.    <u>ARGUMENT</u>

**A.    Plaintiffs Lack Article III Standing to Bring Suit Against Manpower.**

The "threshold question in every federal case" is whether the Plaintiff has standing to sue. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Plaintiff bears the burden of establishing

37440192.1

standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To satisfy Article III's standing requirements, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [Manpower], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560). The Article III standing analysis must proceed plaintiff-by-plaintiff, claim-by-claim, defendant-by-defendant. *See e.g., Ass'n of Am. Physicians & Surgeons v. U.S. Food and Drug Admin.*, 13 F.4th 531, 547 (6th Cir. 2021).

An injury in fact must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). An injury is "concrete" when it is "'real,' and not 'abstract.'" *Spokeo*, 578 U.S. at 340 (citation omitted). "[T]hat is, it must actually exist." *Id*. And the need for "actual or imminent" injury bars "'conjectural or hypothetical'" harms. *Id.* (citation omitted). Threatened future harm is "imminent" only when it is "certainly impending" or there is a "'substantial risk'" it will occur. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 & n.5 (2013)). Allegations of "possible" future harms "are not sufficient." *Clapper*, 568 U.S. at 409.

Following the United States Supreme Court's decision in *TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021), federal courts are increasingly skeptical of standing in data breach litigation. For example, in *In re Practicefirst Data Breach Litigation*, No. 121CV00790JLSMJR, 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022) (attached as **Exhibit B**), the Western District of New York found that plaintiffs lacked standing and therefore granted a motion to dismiss under Rule 12(b)(1). In doing so, the court explained the difficulty data breach plaintiffs face in establishing standing:

> *Clapper*, *TransUnion*, and *Maddox* instruct that to establish standing in a suit for
> damages, a plaintiff must allege both a risk of future harm that is 'actual and
> imminent' or 'certainly impending' as well as a separate, concrete harm that was

caused by exposure to the imminent risk and is proportional to the actual likelihood of the future harm occurring. Id. at *4.

*Id*. at *4.

In data breach cases, more than significant speculation must occur to find standing where a plaintiff alleges injury based on an increased threat or increased risk of identity theft. As one federal court explained:

> [I]dentity theft or fraud will only occur if unknown third parties undertake a series of acts, including the comprehension and organization of the stolen data, the posting of the data for sale, the consummation of a transaction, and then the actual use of the data to make unauthorized purchases or open fraudulent accounts. A future risk of injury that relies on this sort of "speculation about the decisions of independent actors" is not sufficient to establish a concrete injury.

*Legg v. Leaders Life Ins. Co*., 574 F. Supp. 3d 985, 994 (W.D. Okla. 2021) (quoting *Clapper*, 568 U.S. at 414).

Other courts have consistently rejected the idea that an increased risk of identity theft in the future is a viable theory of damages. *See, e.g.*,*McNeil v. Best Buy Co., Inc.*, No. 4:13CV1742 JCH, 2014 WL 1316935, at *4 (E.D. Mo. Apr. 2, 2014); *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007) (collecting cases). And in *TransUnion LLC*, the United States Supreme Court confirmed that, in a suit for damages, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." 594 U.S. at 415. That is, a plaintiff must show that the harm actually materialized or that the risk of future harm caused a separate concrete harm. *Id*. In other words, the mere risk of future harm, without more, is insufficient to demonstrate Article III standing. *TransUnion,* at 436–37; see also *Driehaus*, 573 U.S. at 158) (holding that a future injury constitutes an Article III injury in fact only "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur."). A plaintiff must demonstrate that "the risk of future

harm materialized," or the exposure to that risk caused "some other injury." *TransUnion*, 594 U.S. at 437; *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d. Cir. 2023).

Moreover, a plaintiff must demonstrate that the risk of future harm (i.e., the risk of distribution to third parties) is more than speculative. *Id*. at 438. (citing *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1040 (9th Cir. 2020) (holding that because those plaintiffs had failed to "establish[ ] a serious likelihood of disclosure," the Court declined to "simply presume a material risk of concrete harm.")) "Allegations of possible future injury" or even an "objectively reasonable likelihood" of future injury are insufficient to confer standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). To be sure, Plaintiffs cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending. *Clapper*, 568 U.S. at 416; *see also Bucholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020) (holding that a "plaintiff cannot create an injury by taking precautionary measures against a speculative fear."). When plaintiffs fail to allege a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury. *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295, 303 (2d. Cir. 2021); *Rand v. Travelers Indemnity Company*, 637 F. Supp.3d 55, 66 (S.D.N.Y. 2022).

The recent decision in *Rodriguez v. CRG Lynwood LLC*, No. 24-111576, 2025 WL 2700614 (E.D. Mich. Sept. 22, 2025) (Judge Michelson) (attached as **Exhibit C**), provides a clear and persuasive basis for dismissal. There, the plaintiff asserted class claims arising from a data breach involving Social Security numbers and medical information, yet the court rejected the same injury theories Plaintiffs advance here. The *Rodriguez* court held that an alleged increased risk of future fraud was speculative and insubstantial, and that time and money spent on credit monitoring or account vigilance could not constitute an injury absent a substantial risk of harm. 2025 WL

2700614 at *5. The court likewise rejected the asserted "diminished value" of personal information, noting the absence of any allegation that the plaintiff was hindered in using her data or intended to sell it. *Id.* The *Rodriguez* plaintiff (as the Plaintiffs here), did not allege that the breach caused her to change any of her identifying information (e.g., her Social Security number) or that she had been hindered in her ability to use the compromised information to obtain services or open accounts. Instead, (as Plaintiffs do here)[3] she focused on the value of her data on the black market. *Id.* But, as the court explained, plaintiff had no intent in participating in an illegal market. *Id.*, citing *Lochridge v. Quality Temp. Servs., Inc.*, No. 22-12086, 2023 WL 4303577, at *4 n.2 (E.D. Mich. June 30, 2023) (finding no injury-in-fact where plaintiff did not allege any plan to sell his private information).

Here, Plaintiffs resort to pleading a litany of speculative "injuries" that might materialize at some unspecified time in the future – not concrete harms. In fact, Plaintiffs primarily rely on potential injuries that may (or may not) occur sometime in the future, namely, a "increased risk of fraud and identity theft for the remainder of their lifetimes." (ECF No. 21 at PageID.204-205 ¶ 105). None of these conjectural "injuries" that may or may not ever materialize are sufficient to support constitutional standing under Article III. Plaintiffs further allege that they have spent time researching the Cyberattack, reviewing financial statements, monitoring credit information, and remaining vigilant for signs of identity theft. Plaintiffs allege that they have suffered damages to and diminution in the value of their PII; loss of privacy; lost time; increased spam calls, texts, and emails; anxiety, stress, and fear.

These allegations are woefully insufficient to establish standing. Plaintiffs do not allege any facts showing that they have suffered an actual, particularized, and concrete injury that is

---

[3] ECF No. 21 at PageID.204 ¶¶ 104-105; and PageID.208 ¶ 124.

fairly traceable to Manpower's conduct regarding the Cyberattack. Plaintiffs do not allege that they have been the victim of actual identity theft. Plaintiffs merely claim that they have taken preventative measures in an effort to mitigate the risk of any potential instances of identity theft. Furthermore, Plaintiffs fail to identify even an attempted misuse of their personal information, let alone a successful misuse to their detriment. Plaintiffs do not make any allegations that an unauthorized third party purposefully obtained their data. In fact, Plaintiffs fail to plead facts from which the Court could reasonably infer that the bad actor read, copied, and understood Plaintiffs' particular personal information. Plaintiffs do not allege that any part of the compromised dataset has been misused or that any third party has used Plaintiffs' personal information to fraudulently withdraw money, obtain a credit card, take out a loan, or otherwise assume their identity. Moreover, the allegations from Plaintiffs Brooks and F. Cooper that their PII was "found on the dark web" are not redressable under Michigan law because mere disclosure of stolen information alone is not a present injury if no actual identity theft resulted from the disclosure. *See Polkowski v. Jack Doheny Companies, Inc.,* No. 2:25-cv-10516, 2025 WL 3079358 at *8. (E.D. Mich. Nov. 4, 2025) (Judge McMillion) (attached as **Exhibit D**). Plaintiff F. Cooper further alleges he incurred a $30 fraudulent charge on his checking account, but his checking account information was not impacted by the incident.  (*See* Case 1:25-cv-00969 ECF No. 1-1, PageID.49)[4] *Id* at *7.

In sum, Plaintiffs' alleged risk of future identity theft is too speculative to support Article III standing. Indeed, the Sixth Circuit expressly rejects "bare allegation[s] of anxiety [as] not a cognizable, concrete injury" because they are "too speculative to qualify as an injury in fact" and are "merely a fear of a future harm that is not certainly impending. *Garland v. Orlans, PC.*, 999

---

[4] Plaintiff F. Cooper attached his notice letter to his original complaint, but not the Consolidated Class Action Complaint.

F.3d 432, 436 (6th Cir. 2021) (citing *Clapper*, 568 U.S. at 410). Plaintiffs have not plausibly shown a substantial risk of future identity theft or fraud, have not alleged they incurred any expense as a result of the Cyberattack, and can only point to the self-created "harm" of their time incurred in worrying about future identify theft to secure standing. Plaintiffs cannot create standing. *See Clapper*, 568 U.S. at 416. Accordingly, Plaintiffs' Complaint should be dismissed under Rule 12(b)(1).

**B.      Counts I and II: Plaintiffs' Negligence Claims Fail Because Plaintiffs Do Not Allege Actual Injury or Legally Cognizable Damages.[5]**

Even if Plaintiffs could establish standing to overcome Rule 12(b)(1), Plaintiffs' Complaint does not establish the *prima facie* elements under Rule 12(b)(6) and well-established Michigan substantive law. To state a negligence claim under Michigan law, a plaintiff must plead duty, breach, causation, and damages. *See Henry v. Dow Chem. Co*., 473 Mich 63, 72 (2005). "Underlying these four elements is the issue of injury, and it is well settled that, in Michigan, the injury complained of in a negligence action must be an actual, present injury." *Doe v. Henry Ford Health Sys.*, 308 Mich App 592, 600 (2014). "Michigan law requires more than a merely speculative injury." *Henry*, 473 Mich at 72. The Michigan Supreme Court has emphasized that it "is a *present* injury, not fear of an injury in the future, that gives rise to a cause of action under negligence theory." *Id*. at 73 (emphasis in original). "Consequently, damages 'incurred in anticipation of possible future injury rather than in response to present injuries' are not cognizable under Michigan law." *Doe*, 308 Mich App at 600 (quoting *Henry*, 473 Mich at 73). The present

---

[5] Under Michigan law, a plaintiff may not bring negligence *per se* as a stand-alone claim for relief. *See Abnet v. Coca-Cola Co*., 786 F Supp 2d 1341, 1345 (W.D. Mich. 2011). Regardless the claim still fails for the reasons set out in Section B.

physical injury requirement "more clearly defines who actually possesses a cause of action," "reduces the risks of fraud," and ensures "that there will be standards-legally comprehensible standards that guide the judicial branch's resolution of the matters brought before it." *Henry*, 473 Mich at 76.

In *Doe*, two subcontractors of the defendant healthcare system exposed the plaintiff's medical records on the internet. 308 Mich App at 594-95. The plaintiff sued for negligence and breach of contract, and sought damages for the cost of a credit-monitoring service to protect her identity. *Id*. at 595-96. The trial court denied the defendant's motion for summary disposition, but the appellate court reversed, holding that "[a]bsent some . . . indication of present injury to her credit or identity, it is clear that these damages for credit monitoring were incurred in anticipation of possible future injury." *Id*. at 601. The court also held that because the plaintiff's claimed economic losses "were wholly derivative of a *possible, future* injury rather than an *actual, present* injury,' the costs of these credit-monitoring services are not cognizable under Michigan's negligence law." *Id*. (emphasis in original; internal citation omitted); *see also Nyman v. Thomson Reuters Holdings, Inc*., 329 Mich App 539, 553-54 (2019) (affirming summary disposition of data breach lawsuit where "complaint lacked any allegations that [plaintiffs] had suffered any harm giving rise to actual damages proximately caused by defendant's conduct").

*Henry* similarly establishes that Plaintiff's claims are fundamentally flawed. There, the plaintiffs alleged that a chemical plant negligently released a chemical, dioxin, and placed them at an increased risk of harm. 473 Mich at 68. The plaintiffs sought the judicial creation of a medical monitoring program to detect future health problems. *Id*. at 78. The Michigan Supreme Court rejected the argument that the plaintiffs had suffered an actionable injury because they needed ongoing health monitoring. As the Court held (at *id.*):

37440192.1

It is no answer to argue, as plaintiffs have, that the need to pay for medical monitoring is *itself* a present injury sufficient to sustain a cause of action for negligence. In so doing, plaintiffs attempt to blur the distinction between "injury" and "damages." While plaintiffs arguably demonstrate economic losses that would otherwise satisfy the "damages" element of a traditional tort claim, the fact remains that these economic losses are wholly derivative of a possible, future injury rather than an actual, present injury. A financial "injury" is simply not a present physical injury, and thus not cognizable under our tort system. Because plaintiffs have not alleged a present physical injury, but rather, "bare" damages, the medical expenses plaintiffs claim to have suffered (and will suffer in the future) are not compensable.

The Michigan Court of Appeals has confirmed that the holdings of *Doe* and *Henry* are fully applicable where a plaintiff alleges that a criminal actor intentionally compromised his or her personal information. In *Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339 (Mich Ct App Oct. 14, 2021), the plaintiff alleged that unknown attackers gained access to Munson's systems and accessed information associated with more than 75,000 patients. *Id*. at *1. Munson moved for summary disposition, arguing that the plaintiff failed to state a claim because she alleged only a heightened risk of future injury, rather than an actual, present injury. *Id*. at *2. The trial court granted Munson's motion, and the appellate court affirmed. As the court held (*id.* at *3):

> Even though plaintiff alleged that she . . . suffered present damages, she did not allege any damages that arose from an actual, present injury; instead, the allegations involved possible future injuries and the prophylactic measures that she and the potential class members might reasonably take to prevent or mitigate the potential future injuries. Allegations of this nature are inadequate to state a cause of action for negligence under the rule stated in *Henry*.[6]

The *Rakyta* court continued by explaining that, while the plaintiff "believed her private information had been stolen and sold in the data breach . . . plaintiff did not allege that she or any

---

[6] Manpower cites this unpublished opinion (a copy of which is attached as **Exhibit E**), for the proposition that a heightened risk of future harm does not constitute a cognizable, present injury, even where the plaintiff alleges that the risk of future harm arises from an intentional criminal act by a third party, which no published decision addresses.

other potential class member had actually been a victim of identity theft, let alone the victim of identity theft that could be directly traced to defendant's negligent conduct. . . ." *Id.*

In two decisions from Kent County, complaints with nearly identical allegations were dismissed pursuant to MCR 2.116(C)(8). *See Canterbury v. Corewell Health*, No. 24-00189-NZ (Cir Ct of Kent Cnty June 11, 2024) (attached as **Exhibit F)**; *Saker v. Cherry St. Servs., Inc. d/b/a Cherry Health*, No. 24-01489-CZ (Cir Ct of Kent Cnty October 4, 2024) (attached as **Exhibit G**). In both cases, the court dismissed the complaints in their entirety, with prejudice, and followed the authority of *Henry*, *Doe*, and *Rakyta* in finding the plaintiffs had merely alleged possible future injuries and other prophylactic measures to mitigate the potential future injuries.

*Polkowski v. Jack Doheny Companies, Inc.,* No. 2:25-cv-10516, 2025 WL 3079358 (E.D. Mich. Nov. 4, 2025) (Judge McMillion) (attached as **Exhibit D**), further compels dismissal here. In *Polkowski*, the plaintiff alleged that his PII was exfiltrated and published on the dark web following a cyberattack and asserted familiar theories of injury, including increased risk of future identity theft, mitigation costs, emotional distress, diminished value of PII, and loss of privacy. The court ultimately dismissed the case with prejudice, holding that the plaintiff could not establish a compensable present injury under Michigan law. Relying on *Doe* and *Henry*, the court emphasized that speculative future harm, derivative economic losses incurred to guard against possible misuse, and the mere disclosure or publication of PII—absent actual identity theft, financial loss, or present injury to credit or identity—are not cognizable damages under Michigan negligence or contract law. 2025 WL 3079358 at *9. The *Polkowski* court further explained: **"[i]t is clear, the fact that PII is posted to the dark web, while unsettling, cannot be remedied under Michigan law because disclosure of stolen information alone is not a present injury if no actual identity theft resulted from the disclosure."** *Id.* at *8.

14

Similarly, in *Rodriguez v. CRG Lynwood LLC*, No. 24-111576, 2025 WL 2700614 at *7 (E.D. Mich. Sept. 22, 2025) (Judge Michelson) (attached as **Exhibit B**), the court relied on *Henry* to underscore that economic losses derivative of a possible future injury are not compensable and that emotional distress is actionable only when accompanied by present physical manifestations. Both the *Polkowski* and *Rodriguez* courts flatly rejected the precise theories advanced by Plaintiffs in this case.

Like the plaintiffs in *Rakyta*, *Rodriguez*, *Polkowski*, and numerous other data breach cases, Plaintiffs here merely allege possible future injuries and prophylactic measures they might take to mitigate the potential future injuries. But, under clear and binding Michigan law, that is not enough. Present damages derivative of a possible future injury are not actionable. Nor does fear of future injury serve as a basis for recovery based on a negligence theory. Instead, Plaintiffs must allege that they suffered actual, *present* injury – which they have not done. Without a concrete allegation that Plaintiffs suffered a present injury – such as a claim that a third-party actually used Plaintiffs' personal information to obtain a credit card or take out a loan – Plaintiffs do not have a legally cognizable claim. In sum, Michigan's strict present-injury requirement forecloses data-breach claims predicated on hypothetical future misuse, self-imposed monitoring costs, or abstract privacy concerns. Accordingly, Counts I and II of Plaintiffs' Complaint must be dismissed.

**C.    Count III: Plaintiffs' Invasion of Privacy Claim Fails to State a Claim.**

The common-law right of privacy is said to protect against four types of invasion of privacy: (1) intrusion upon the plaintiff's seclusion or solitude; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, or the plaintiff's name or likeness. *Tobin v. Civil Service Comm.*, 416 Mich 661, 672 (1982); *see Lewis v. LeGrow*, 258 Mich

15

App 175, 183 (2003). Plaintiffs do not specify which type of invasion of privacy they are alleging, but they appear to claim intrusion upon seclusion and/or public disclosure of private facts.

To state a claim for intrusion upon seclusion, a plaintiff must show: "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable [person]." *Martin v. Evoqua Water Techs., LLC*, No. 1:19-cv-585, 2021 WL 1088260, at *6 (W.D. Mich. Feb. 24, 2021) (citing *Doe*, 212 Mich App at 88). An action for intrusion upon seclusion focuses on the manner in which the information was obtained, not on the information's publication. *Tobin v. Civil Service Comm.,* 416 Mich 661, 672-74 (1982). In this respect, the claim is analogous to a trespass, except that a physical intrusion of property is unnecessary. *Duran v. Detroit News, Inc.,* 200 Mich App 622, 630 (1993). No invasion of privacy occurs under the theory of intrusion upon seclusion where the plaintiff consented to the alleged intrusion. In the context of invasion of privacy, express or implied consent is often referred to as a waiver of the right to privacy. *Earp v. Detroit,* 16 Mich App 271 (1969).

At the outset, Plaintiffs cannot maintain an intrusion upon seclusion claim against Manpower because they concede that they willingly provided their PII to Manpower. (ECF No. 21 at PageID. 211-232 ¶¶ 141, 153, 166, 178, 191, 203, 215, 227, 239, 251, 265). By utilizing Manpower to obtain employment – or otherwise applying for employment with Manpower (Plaintiff Conrad) - Plaintiffs expressly and impliedly consented to Manpower obtaining the PII at issue, and they make no claim to the contrary. As such, there can be no credible allegation that Manpower obtained information about Plaintiffs through some method objectionable to a reasonable person. Because Plaintiffs cannot demonstrate that Manpower obtained their private

information through some objectionable method, they cannot establish the requisite elements of this claim, and Count III must be dismissed.

To state a claim for an invasion of privacy through public disclosure of private facts, a plaintiff must allege: "(1) the disclosure of information, (2) that is highly offensive to a reasonable person, and (3) that is of no legitimate concern to the public." *Doe v. Mills*, 212 Mich App 73, 80 (1995); *Duran v. Detroit News, Inc.*, 200 Mich App 622, 631 (1993). As the term "public" suggests, the claim requires disclosure "to so many persons that the matter is substantially certain to become public knowledge." *Lansing Ass'n of Sch. Administrators v. Lansing Sch. Dist. Bd. of Ed.*, 216 Mich App 79, 89 (1996). A defendant does not invade a plaintiff's right of privacy by communicating a fact "concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.* And importantly, the claim is an intentional tort. *Doe*, 308 Mich App 592, 598 (2014); *Smith v. Calvary Christian Church*, 462 Mich. 679, 680, 688-89 (2000) ("to establish an invasion of privacy through the disclosure of private facts, a plaintiff must show that the disclosure of those facts was intentional"). Plaintiffs' claim here fails for three separate reasons.

*First*, Plaintiffs fail to allege any intentional disclosure by Manpower. Nor could they: Plaintiffs' core theory of liability involves the alleged negligent protection and disclosure of PII. That accusation is meritless, but it at least makes sense. After all, the Cyberattack was targeted against Manpower, and Plaintiffs reasonably do not (and cannot) plead any intentional disclosure of information. Dismissal should be granted for that reason alone.

*Second*, even if Plaintiffs could allege an intentional act, they fail to allege that the PII was disclosed to such a large group that it was substantially certain to become public knowledge. In fact, Plaintiffs do not allege that anyone in particular saw their information. In this regard, their claim is like the plaintiffs in *Nyman*, who did not allege that the defendant actually disclosed their

37440192.1

private information to so many persons that made it substantially certain the information would become public knowledge, 329 Mich App at 551-52, and *Doe*, where there was no indication that the information which was inadvertently made available online was viewed by a third party or used inappropriately, 308 Mich App at 594-95. The courts in those cases approved dismissal for the defendants on the invasion of privacy claims, and this Court should too.

And *third*, because Plaintiffs do not allege that anyone accessed the information, they fail to allege any actual injury or damages. Indeed, Plaintiffs cannot demonstrate that they have suffered any harm at all giving rise to cognizable damages proximately caused by Manpower.

**D.    Count IV: Plaintiffs' Breach of Implied Contract Claim is Unavailing.**

In order to plead a claim for breach of contract, a plaintiff must establish (1) the existence of a contract, (2) Manpower breached the contract; and (3) the breach resulted in damages to Plaintiffs. *Bank of Am., N.A. v. First Am. Title Ins. Co.*, 499 Mich 74, 100 (2016). Plaintiffs attempt to plead an implied-in-fact contract. Such a contract "does not exist, unless the minds of the parties meet, by reason of words or conduct." *Detroit v. Highland Park*, 326 Mich 78, 100 (1949). Like an express contract, "[a]n implied contract must also satisfy the elements of mutual assent and consideration." *Mallory v. City of Detroit*, 181 Mich App 121, 127 (1989).

This claim fails because Plaintiffs do not allege: (1) a meeting of the minds; (2) the exchange of consideration; and (3) damages. A "fundamental tenet of all contracts is the existence of mutual assent or a meeting of the minds on all essential terms of a contract." *See Burkhardt v. Bailey*, 260 Mich App 636, 655 (2004). Here, Plaintiffs have not alleged that the parties reached the requisite meeting of the minds to form an enforceable contract. Plaintiffs fail to specify any essential terms of the purported contract, including dates, conditions, what consideration Plaintiffs gave in exchange for Manpower's alleged obligations, and what obligations Plaintiffs allegedly

performed. Absent an allegation that the parties knew and understood the terms of the purported agreement, including data security services, Plaintiffs have not alleged that the parties reached a meeting of the minds on any contract.

Furthermore, a valid contract must be supported by legal consideration. *See Barclae v. Zarb*, 300 Mich App 455, 471 (2013). "A pledge to undertake a preexisting statutory duty is not supported by adequate consideration." *Gen. Aviation, Inc. v. Capital Region Airport Auth.*, 224 Mich App 710, 715 (1997). Where the law requires a defendant to take, or refrain from taking, certain actions, those actions cannot be recast as contractual obligations. *Id.* (affirming dismissal of contract claim where defendant owed a preexisting obligation under the Michigan Aeronautics Code). "A pledge to undertake a preexisting statutory duty is not supported by adequate consideration." *Gen. Aviation*, 224 Mich App at 715. This principle is particularly important in the healthcare setting. *Alar v. Mercy Mem. Hosp.*, 208 Mich App 518, 525 (1995) (hospital's promise to keep information confidential as part of treatment was not consideration for alleged contract due to hospital's preexisting duty to protect same); *Powers v. Peoples Cmty. Hosp. Auth.*, 183 Mich App 550, 554 (1990) (same); *Penner v. Seaway Hosp.*, 169 Mich App 502, 511 (1988) (same). The reasoning in *Alar*, *Powers*, and *Penner* applies here and is dispositive. Plaintiffs allege that Manpower had a duty to protect the information in its possession under the FTC Act. (ECF No. 21 at PageID.196-199 ¶¶ 68-80). Any alleged promise by Manpower to protect the information in its possession would merely be a promise to comply with its alleged preexisting statutory duties and cannot be recast into new consideration to support a contractual obligation.

Moreover, Plaintiffs' allegations as to consideration are utterly insufficient because any purported implied contract would have been duplicative of the parties' express staffing services agreement (or employment relationship) and unsupported by independent consideration.

*Polkowski*, 2025 WL 3079358 at *10 (dismissing breach of implied contract claim and holding that the plaintiff's provision of PII was merely incidental to their employment and cannot serve as consideration for a separate agreement to safeguard that data).

Finally, a plaintiff asserting breach of contract must allege damages. *Miller-Davis*, 495 Mich at 178. Contract damages are measured by "the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Ferguson v. Pioneer State Mut. Ins. Co.*, 273 Mich App 47, 54 (2006). Damages are not presumed; rather, the plaintiff must prove its damages with "reasonable certainty" and "may recover only those damages that are the direct, natural, and proximate result of this breach." *Alan Custom Homes, Inc. v. Krol*, 256 Mich App 505, 512 (2003). Damages "must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies." *Doe*, 308 Mich App at 602.

In the data-breach context, absent some present injury to a plaintiff's credit or identity, the costs associated with mitigation efforts are not cognizable under a breach-of-contract theory. *See id*. at 601-03. In *Doe*, the plaintiff could not recover the money she paid for credit monitoring under a breach-of-contract claim, because those costs were "speculative insofar as they do not arise from the purported breach of contract but depend entirely on the occurrence of multiple contingencies which might or might not occur at some point in the future." *Id*. at 602. Thus, "the alleged breach [did] not cause[] plaintiff to suffer an injury to her identity or credit. Rather, any injury is entirely contingent on the hypothetical possibility that some unknown person viewed the information and at some unknown time in the future might make use of it for nefarious purposes." *Id*. And because those purported damages "derive from a possible future harm that might or might not occur," the plaintiff could "not recover [them] under contract law s." *Id.*; *see also Saker*, No.

20

24-01489-CZ (**Exhibit F**) (citing *Doe* and dismissing contract claim because plaintiffs failed to allege legal damages, and alleged only a "hypothetical possibility" of cognizable damages).

In *Rakyta*, the court would not presume contract damages where the plaintiff failed to allege that she suffered cognizable damages as a result of a data breach. 2021 WL 4808339 at *7, citing *Nyman*, 329 Mich App at 554; and *Doe*, 308 Mich App at 603. As here, the only potential damages that the *Rakyta* plaintiff alleged involved prophylactic measures to mitigate the risk of potential future harms, which are not cognizable. *Id.,* citing *Henry*, 473 Mich at 78. Because the plaintiff did not allege damages that were recoverable under Michigan law, the *Rakyta* court affirmed the trial court's dismissal of the plaintiff's claims under MCR 2.116(C)(8). *Id.* The same result is warranted here because Plaintiffs do not allege any actual injury to their credit or identity, and the time they supposedly spent mitigating the risk of future injury that may or may never occur is not legally cognizable. Accordingly, Plaintiffs' claim for breach of an implied contract under Count IV fails.

**E.    Count V: The Unjust Enrichment Claim Fails Because Plaintiffs Do Not Allege that They Bestowed a Benefit on Manpower or That Any Inequity Occurred.**

To state a claim for unjust enrichment, a "plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich App 187, 195 (2006). Notably, "not all enrichment is necessarily unjust. The key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit." *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich App 192, 205 (2017) (dismissing unjust enrichment claim where "the benefit defendant received . . . was nothing more than what all the parties contemplated"); *Morris Pumps*, 273 Mich App at 196 (similar).

Against this standard, Plaintiffs' unjust enrichment claim fails. Plaintiffs do not allege that

Manpower retained any independent benefit from them.[7] Therefore, any benefit Manpower received from maintaining or using Plaintiffs' PII was merely incidental to the parties' services agreement (or employment relationship) and cannot be said to have been conferred directly by Plaintiffs, as required by law. <u>The benefit must come "directly from the plaintiff."</u> *Polkowski*, 2025 WL 3079358 at *11 (citing *Lochridge v. Quality Temporary Services, Inc.*, 2023 WL 4303577 at *7 (E.D. Mich. 2023). <u>Mere monetary benefits derived from the "use of [Plaintiffs' PII]" are not sufficiently direct from the Plaintiffs to satisfy the first prong of an unjust enrichment claim.</u> *Id.* Rather, the alleged benefit, cost savings from underinvesting in cybersecurity, would be derivative of Manpower's internal business decisions, not a transfer of value from Plaintiffs themselves. Plaintiffs make no assertion that Manpower retained an independent benefit from them. *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich App 192, 205 (2017). Quite simply, Plaintiffs have failed to allege that they bestowed a benefit upon Manpower, or that some inequity would result from Manpower retaining that (non-existent) benefit. As a result, Count V must be dismissed.

**F.** **Alternatively, Plaintiffs Brooks, Harmon, and Doublin Must Be Dismissed Based on their Agreements to Arbitrate.**

Plaintiffs Brooks, Harmon, and Doublin must be dismissed from this case because they and Manpower have expressly agreed to arbitrate the claims asserted in this case. Federal law favors settlement of disputes by arbitration. Federal Arbitration Act ("FAA"), 9 U.S. C.A. §1 *et seq*. The United States Supreme Court has held that the FAA achieves the federal public policy

---

[7] Indeed, as an employee, Plaintiff Conrad did not pay for anything, let alone for data privacy. Moreover, there is no dispute that Plaintiff Conrad received the agreed-upon compensation for her employment. *See Saker, et al. v. Cherry Street Services, Inc. d/b/a Cherry Health* (Case No.: 24-01489-CZ; Kent County) (**Exhibit G**) (holding plaintiff failed to show any sort of inequity or that the defendant had been enriched because of the data breach).

favoring arbitration of disputes. *Southland Corporation v Keating,* 465 US 1, 11-16 (1984). The FAA was designed to: (i) override judicial reluctance to enforce arbitration agreements; (ii) to relieve court congestion; and (iii) provide parties with a speedier and less costly alternative to litigation. *See Allied-Bruce Terminix Companies, Inc v Dobson,* 513 US 265, 270 (1995). When interpreting an arbitration agreement, a court should examine the language of the contract in light of the strong federal policy in favor of arbitration. *Mitsubishi Motors Corporation v Soler Chrysler-Plymouth,* 473 US 614, 626 (1985). *See also Stout v JD Byrider,* 228 F3d 709, 714 (6th Cir. 2000).

Any ambiguities in the contract, or doubts as to the parties' intentions should be resolved in favor of arbitration. *See Soler Chrysler-Plymouth,* 473 U.S. at 626. When considering a motion to compel arbitration under the FAA, a court must determine: (i) whether the parties agreed to arbitrate; (ii) the scope of the arbitration agreement; (iii) if federal statutory claims are asserted and if so, determine whether Congress intended those claims to be nonarbitrable; and (iv) if all claims are subject to arbitration, if not a court must determine whether to stay the remainder of the proceeding pending arbitration. *Stout,* 228 F3d at 714. Likewise, it is a well-established policy that arbitration is a favored procedure for resolving disputes in Michigan. *County of Ottawa v. Jaklinski*, 423 Mich. 1, 23 (1985); *Detroit Automobile Inter-Insurance Exchange v Reck,* 90 Mich App 286; 282 NW2d 292 (1979); *also Wold Architects & Eng'rs v. Strat & Assoc, Inc,* 474 Mich. 223, 246 (2006) (arbitration is favored as an efficient, inexpensive, and fair method of resolving disputes). Where arbitration is sought, "[t]he burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement." *Altobelli v. Hartmann*, 499 Mich. 284, 295 (2016).

The determination of whether a claim is subject to arbitration under Michigan law is made by reference to a three-prong inquiry: (i) whether there is an arbitration agreement between the parties; (ii) whether the disputed question is arguably covered by an agreement and arbitration clause; and (iii) whether the dispute is expressly exempt from arbitration by the terms of the parties' agreement. *Id*. Where an agreement to arbitrate exists, absent an express provision excluding a particular grievance from arbitration, or more forceful evidence of the parties' intent to exclude a claim from arbitration, the disputed issue should be resolved via arbitration. *Kaleva-Norman-Dickson School District No. 6 Counties of Manistee, et al v Kaleva-Norman-Dickson School Teachers' Ass'n,* 393 Mich 583; 227 NW2d 500 (1975).

On or around April 3, 2023, November 13, 2023, and January 22, 2024, respectively, Plaintiffs Brooks, Harmon, and Doublin entered into Arbitration Agreements with Manpower as a condition of their employment with Manpower. **Exhibit A.** Pursuant to the Arbitration Agreements, Plaintiffs Brooks, Harmon, and Doublin and Manpower mutually agreed that "**all disputes between them of any kind or type ... whenever they may arise will be submitted exclusively to final and binding arbitration as specified herein** [...]" *Id.* (Empasis added). Moreover, the Arbitration Agreement expressly states that "[c]lass action or collective action arbitration is not permitted under this Agreement. [Manpower] and [Plaintiffs] expressly agree to arbitrate any disputes on an individual basis only and not on a class action or collective action basis. *Id*. (Empasis added).

Here, there is no dispute that Plaintiffs Brooks, Harmon, and Doublin agreed to arbitrate when they entered into valid and enforceable Arbitration Agreements with Manpower on or around April 3, 2023, November 13, 2023, and January 22, 2024, respectively. Pursuant to the Arbitration Agreements, Plaintiff Brooks, Harmon, and Doublin, and Manpower expressly agreed to arbitrate

the claims raised by Plaintiffs Brooks, Harmon, and Doublin in this matter. Accordingly, pursuant to the Federal Arbitration Act, 9 U.S.C.A. § 1, *et seq*., Plaintiffs Brooks, Harmon, and Doublin must be dismissed from this case so that Plaintiffs Brooks, Harmon, and Doublin, and Manpower may proceed to binding arbitration proceedings.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant Manpower of Lansing, MI, Inc. respectfully requests this Court enter an Order: (A) dismissing Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) for lack of Article III standing; (B) dismissing Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted; (C) enforcing Plaintiffs Brooks', Harmon's, and Doublin's respective agreements to arbitrate; and (D) awarding Manpower of Lansing, MI, Inc. such other and further relief as is appropriate.

Dated: January 26, 2026,                              Respectfully Submitted,

<div style="margin-left:45%">

*/s/ Timothy J. Lowe*
Timothy J. Lowe (P68669)
Mitchell A. Capp (P84197)
McDonald Hopkins PLC
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
tlowe@mcdonaldhopkins.com
mcapp@mcdonaldhopkins.com
*Counsel for Manpower of Lansing, MI, Inc.*

</div>

25

## <u>CERTIFICATE OF COMPLIANCE WITH W.D. MICH. LCivR 7.2(b)(ii)</u>

Pursuant to Local Civil Rule 7.2(b)(i)&(ii), Defendant Manpower of Lansing, MI, Inc.'s Brief in Support of Its Motion to Dismiss Plaintiff' Complaint and/or Compel Arbitration does not exceed 10,800 words, including headings, footnotes, citations and quotations. Microsoft Word 2016 was used to generate a word count for the above-mentioned Brief of approximately 8,084 words.

Dated: January 26, 2026,                    Respectfully Submitted,

*/s/ Timothy J. Lowe*
Timothy J. Lowe (P68669)
Mitchell A. Capp (P84197)
McDonald Hopkins PLC
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
tlowe@mcdonaldhopkins.com
mcapp@mcdonaldhopkins.com
*Counsel for Manpower of Lansing, MI, Inc.*

37440192.1

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on January 26, 2026, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

<div align="right">

*/s/ Timothy J. Lowe*
Mitchell A. Capp (P84197)
*Counsel for Manpower of Lansing, MI, Inc.*

</div>

37440192.1